# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EDGARDO VELEZ-RAMOS (2) <br><br> Defendant. | CRIMINAL NO. 18-767 (PAD) |

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

Before the court is the defendant's "Motion Requesting De Novo Bail Hearing" (Docket No. 67). For the reasons explained below, defendant shall be released pending trial under the conditions included in Section III of this Memorandum and Order.

## I. BACKGROUND

On December 11, 2018, defendant, Edgardo Vélez-Ramos (2), was charged with one count of aiding and abetting a convicted felon –his brother and co-defendant Ricardo Vélez-Ramos (1)– in the illegal possession of a firearm and ammunition, to wit, a black Aeroprecision pistol, model LLC, serial number V0841867, 5.56 caliber, and 74 rounds of 5.56 caliber ammunition, in violation of 18 U.S.C. § 922(g)(1), § 924(a)(2), and § 2 (Docket No. 25).

On December 11, 2018, U.S. Magistrate Camille L. Vélez-Rivé presided over a detention hearing and denied defendant's request for bail, finding that he posed a serious risk of danger to the community (Docket Nos. 33, 37 and 39). On January 21, 2019, defendant requested a *de novo* bail hearing (Docket No. 54). The court referred the motion to U.S. Magistrate Judge Vélez-Rivé to reopen the detention hearing given that defendant proffered evidence that was not originally available at the time of the detention hearing (Docket No. 55). On February 7, 2019, the Magistrate

Judge presided over the de novo hearing (Docket No. 71). After the hearing, she commended defendant's attorney for his efforts, but denied bail stating that the new evidence did not change her original decision of not granting bail and that defendant is a danger to the community. Id. Thus, the motion at Docket No. 54 was DENIED.[1]

On Friday, February 8, 2019, defendant filed a "Motion Requesting De Novo Bail Hearing" (Docket No. 67). On that same day, he requested findings of facts supporting detention to the Magistrate Judge (Docket No. 68), which she denied (Docket No. 70). On Tuesday, February 12, 2019, the court scheduled a *de novo* hearing for February 21, 2019 (Docket No. 73). The hearing was held as scheduled (Docket No. 83). The government proceeded via proffer and requested detention. Both parties argued their positions and presented exhibits. Id. Based on the information received during the hearing, the court ordered that defendant remain in custody pending further record review. Id. Further review has persuaded the court that defendant should be granted bail under the circumstances specified below.

## II. DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433,

---

[1] In preparing this Memorandum and Order, the court listened to the recording of the hearings held before the Magistrate Judge on December 11, 2018 and February 7, 2019. With limited exceptions and contrary to the U.S. District Judges, Magistrate Judges do not have a Court Reporter present during the numerous proceedings held before them. Therefore, unless a transcript is requested following the applicable rules and regulations, no transcript is prepared or available for those proceedings. The content of the hearing, however, is always recorded using a Digital Court Recording "DCR" program. District Judges have immediate access to DCR audio files, and may listen to the audio files when reviewing a determination made by a Magistrate Judge.

436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community.

This is not a presumption case, for the offense is not listed in 18 U.S.C. §§ 3142(e)(2) and (3), as an offense to which the detention presumption applies. However, the statute authorizes pretrial detention in cases that involve a felony that is not otherwise a crime of violence that involves the possession or use of a firearm or destructive device (as those terms are defined in Section 921), or any other dangerous weapon. 18 U.S.C. § 3142(f)(1)(E). In making a detention determination, the court must consider the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990).

1. Nature and Circumstances of Offense[2]

The offense alleged in this case, occurred two days after unknown individuals murdered defendant's nephew in Chardón Avenue in San Juan, Puerto Rico. Transcript III, p. 10. The

---

[2] For ease of reference, the court refers to the Transcript of the Detention Hearing held on December 11, 2018 as "Transcript I" (Docket No. 81), to the Transcript of the De Novo Hearing held before the Magistrate Judge on February 7, 2019, as "Transcript II" (Docket No. 80); and to the Transcript of De Novo Hearing held before the undersigned on February 21, 2019, as "Transcript III." District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

deceased was being investigated by the Drug Enforcement Administration in Ponce, Puerto Rico as a leader of a drug trafficking organization that connected Ponce and the State of Florida. Id.

After the murder, defendant's brother traveled to Puerto Rico. Defendant picked him up at the airport to take him to the Institute of Forensic Science to identify his son's death body. Transcript II, p. 13. The defendant's brother was with an individual named Elvin Joel Rodríguez and the deceased's widow, Maria del Mar. Id.

Defendant, who is a retired municipal police officer, has a permit to carry a firearm. To protect himself, his brother, and the decedent's widow, he decided to carry two of his firearms and ammunition with him.[3] Transcript III, 2. However, for reasons that are contested, the group stopped in the apartment where defendant's nephew lived in Isla Verde.[4]

The government proffered that federal agents and state agents, were conducting surveillance at the apartment when they saw a group of several males and a female (who was later identified as Maria del Mar) talking and carrying bags, which in the agents' experience, had firearms. Transcript III, pp. 10-13. Further, it proffered that defendant was carrying a bag from which a rifle protruded. Id. at p. 12. All the individuals walked up the stairs. Id. The agents knocked on the door of the apartment and announced their presence. Id. Then, other individuals who are also charged in the Indictment[5] were seen dropping both a machine gun and a bag that contained a machine gun from the balcony of the apartment, towards the street. Id.

---

[3] Defendant also proffered that his nephew received over 100 wounds of high caliber firearms. Therefore, at the time of the arrest, he carried enough ammunition to protect himself, his brother and his nephew's widow from an attack similar to the one his nephew suffered. Transcript III, p. 21.

[4] Defendant proffered they stopped at the apartment to allow the decedent's friend, Christian Román-Ortiz (3) pick up his suitcase. Transcript III, pp. 2-3. Christian had traveled two days before from Florida with the deceased, and his suitcase was still at the apartment. Id. at p. 3. Thus, Christian arrived at the apartment with two friends. Id. at p. 5. Defendant alleges he did not know Christian or the other two friends. Id.

[5] To wit, defendants Christian Román-Ortiz (3) and Axel J. Ocasio-Jackson (4).

The agents entered the apartment where defendant was found in possession of a loaded firearm, and defendant's brother –a convicted felon– was found in a bedroom where defendant's bag with the rifle style pistol and 74 rounds of ammunition, was found. For the government, defendant was carrying the firearms and the extensive rounds of ammunition up toward the apartment where a known convicted felon was, with the purpose of giving the rifle-type firearm to that individual. Id. at p. 14. Accordingly, the defendant is charged with aiding and abetting a convicted felon in the illegal possession of a firearm (Docket No. 25).[6] The parties admit the weapon qualifies as a firearm or destructive device (as those terms are defined in Section 921), or as a dangerous weapon under 18 U.S.C. § 3142(f)(1)(E). Transcript III, pp. 7-8. If convicted, defendant faces up to 10 years of imprisonment. The offense charged, the circumstances of the crime, and the statutory exposure underpinning it, favor detention.[7]

2. Weight of Evidence

The weight of the evidence for bail purposes appears to be significant. The government pointed to video recordings of the surveillance, pictures, and backpacks that contained firearms. In the video, the government proffered, all of the individuals charged in the Indictment were together, including the defendant, with the rifle-type pistol, going up to the stairs. Two of the firearms seized in the apartment ended up being machine guns. Transcript III, pp. 10, 12, 16. In all, this factor favors detention.

---

[6] Although the government admits he had a firearms license, it posits he was aware that he was not allowed to carry two firearms at the same time. Here, it is uncontested that on the day of the events, he was carrying the rifle-style firearm and a Glock pistol .40 caliber loaded, with 2 additional magazines. Transcript III, p. 2.

[7] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989).

3. History and Characteristics of the Defendant

The government does not argue there is a risk of flight. Transcript III, p. 20. The Pretrial Services Report states that the defendant is 50 years of age, and a lifelong resident of Ponce, Puerto Rico (Pretrial Services Report, pp. 1-2). He has two full siblings and three paternal siblings. Id.[8] Defendant has been legally married to Zulma Irizarry-Báez, for the past 31 years and they have lived in the same house for 2 years. They have two sons. Id. at p. 2. At the time of his arrest, he was working as a sales attendant at Mi Barrio Casa Empeño (which is owned by his brother) and helping his wife, who is an insurance agent, in her Aflac office. Id. at p. 3.

Prior to his current employment, defendant was employed by the Municipal Police of Ponce for 21 years. Id. He has a high school diploma and a certification in automobile mechanics from Automeca. Id. at p. 2. He has a valid passport, no criminal history, does not speak English and has traveled outside of Puerto Rico for vacation. Id. at pp. 2 and 6. Defendant's history and characteristics favor release.

4. The Danger Posed to the Community by Defendant's Release

Defendant contends that several factors weigh in favor of bail and in support of the conclusion that he is not a danger to the community. In particular, he claims that: (1) he has no history of violence and no prior records or convictions; (2) he has a feasible explanation as to why he was legally carrying his firearms and the ammunitions the day he was detained; (3) he retired honorably from the municipal police force; and (4) he is highly regarded by the community.[9] With the exception of defendant's explanation regarding why he was carrying his firearms the day of

---

[8] One of which is co-defendant Ricardo Vélez-Ramos (1).

[9] See, Docket No. 54-6 and 61, Character letters submitted by defendant in support of his request for bail.

his arrest, the government does not question the factors defendant has articulated. It, however, claims that as a retired police officer and an individual with a permit to possess firearms, he should be held to a higher standard as to the degree of the dangerousness that those firearms pose to the public. Transcript III, p. 15.[10] All things considered, the court is persuaded that defendant's release would not pose a danger to the community.

### III. CONCLUSION

Having carefully considered all the evidence, the court concludes that the government has not shown, by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant is released. Thus, defendant Edgardo Vélez-Ramos, is hereby granted bail under the conditions mentioned in the Pretrial Services Report (id. pp. 6-7), to wit:

1. Defendant shall not violate federal, state, or local law while on release;

2. Defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a;

3. Defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number;

4. Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose;

5. Defendant shall execute a $20,000.00 bond ($10,000.00 cash/secured and $10,000 unsecured) binding the defendant to pay the United States the sum of $20,000.00 in the

---

[10] The court is aware that convicted felons are regarded as persons who pose serious risks of danger of the community, United States v. Dillard, 214 F.3d 88, 95 (2d Cir. 2000)(so noting), and defendant is being charged with adding and abetting one. But considering the totality of the circumstances here, the court does not believe defendant poses a danger to the community.

    event of a failure to appear as required or to surrender as directed for service of any sentence imposed;

6. Defendant shall:

   a. submit to supervision by and report for supervision to the U.S. Probation Office.

   b. continue or actively seek employment.

   c. maintain or start an education program.

   d. surrender any passport to the U.S. Probation Office.

   e. not obtain a passport or other international travel document.

   f. abide by the following restrictions on personal association, place of abode, or travel: Shall reside at the address of record; shall not leave the jurisdiction of this District without first obtaining written permission from the court.

   g. avoid all contact directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

   h. refrain from possessing a firearm, destructive device, or other dangerous weapons.

   i. refrain from excessive use of alcohol.

   j. refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

   k. report as soon as possible, to the U.S. Probation Office or the Supervising Officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

    l.  Exception: The Chief U.S. Probation Officer or his designee, may authorize temporary changes of address and overseas travels to the mainland U.S. only, not exceeding 15 calendar days, provided the U.S. Attorney has no objection to it. If objected, request will have to be made in writing to the court.

    m.  Shall not enter any airport or pier with the EXCEPTION stated above.

**SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of April, 2019.

                                                S/Pedro A. Delgado-Hernández
                                                PEDRO A. DELGADO-HERNÁNDEZ
                                                United States District Judge